IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SIEMENS WATER TECHNOLOGY | § | |
| CORP., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-cv-3272 |
| | § | |
| TRANS-UNITED, INC., | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on Defendant Trans-United's Motion for Summary

Judgment [Doc. # 20], to which Plaintiff Siemens Water Technology Corporation

("Siemens") filed a Response [Doc. # 22] and Defendant filed a Reply [Doc. # 28].

The Court has carefully reviewed the entire record, the parties' arguments, and

applicable law, and concludes Defendant Trans-United's Motion for Summary

Judgment should be **denied without prejudice**.

## I.   BACKGROUND

The record reveals the following undisputed facts.  On September 6, 2005,

Trans-United entered into a Broker/Carrier Agreement [Doc. # 22, Exh. 2] with ATS

Logistics Services, Inc. ("ATS").  As part of the Broker/Carrier Agreement, Trans-

United agreed to "transport shipments to and from such origins and destinations as may

be designated by [ATS] from time-to-time, at the rates set forth in Exhibit A attached

hereto, or agreed to in the Individual Load Confirmation delivered by [ATS] to [Trans-United]." Broker/Carrier Agreement [Doc. # 22, Exh. 2], at 4. Siemens hired ATS to act as its broker to arrange the transportation of a Quench Separate Tower ("QST") from Rothschild, Wisconsin, to the Port of Houston. On October 24, 2008, Trans-United signed ATS's Load Confirmation & Rate Agreement ("Load Confirmation") [Doc. # 22, Exh. 4] agreeing to transport the QTS to the Port of Houston pursuant to its Broker/Carrier Agreement with ATS. Trans-United hired Pathway, Inc. ("Pathway") to transport the QST on behalf of Trans-United.

On October 31, 2008, Michael Shea, a Siemens employee, obtained the Shipper's Domestic Truck Bill of Lading (the "Bill of Lading") [Doc. # 20, Exh. 1] from 24/7 Express Logistics Inc.'s ("24/7 Logistics") website and filled out the Bill of Lading. 24/7 Logistics has no involvement in the QST shipment and is not a party to any of the contracts signed as part of the shipment. Shea gave the Bill of Lading to the Pathway driver, David Husband, who signed it. The QST was loaded on Husband's/Pathway's tractor-trailer and left Rothschild for the Port of Houston on November 1, 2008. En route, the QST on the trailer struck the underside of the I-39 Porter Drive overpass in Plover, Wisconsin. Both the QST and the overpass sustained visible damage. Siemens' personnel examined the external structure of the QST. They determined that those lugs had been bent from the impact, removed the lifting lugs, and

decided that Husband should continue to the Port of Houston.[1]  The QST arrived in Houston on November 18, 2008.  Lyndon Jones received the QST, wrote on the Delivery Receipt [Doc. # 22, Exh. 5] and the Bill of Lading that the QST was in good condition except for "light scratches, scraps [sic], rust," and signed each document. On or about November 21, 2008, the QST left the Port of Houston for Gujarat, India.

On October 22, 2009, Siemens sent ATS a notification that the QST arrived with damaged contents and that the total amount of loss was unknown but at least $290,000 plus labor costs.  "Letter Holding Carrier Liable" [Doc. # 22, Exh. 10].  That same day, Siemens sent a "Form for Presentation of Loss and Damage Claim" (the "Form") [Doc. # 22, Exh. 12 at 3] to Trans-United, claiming damages of $361,428.86.

Siemens filed suit against Trans-United on September 2, 2011.  Trans-United filed a Motion to dismiss Siemens' claim for Attorneys' fees [Doc. # 8], which was granted by the Court on December 21, 2011 [Doc. # 12].  On April 30, 2012, Siemens amended its Complaint [Doc. # 13].

## II.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case

---

[1]     An unsigned Trans-United Freight Invoice [Doc. # 22, Exh. 6], listing the cost of the shipment, was created on November 14, 2008.

and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'"  *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001)

(internal citation omitted).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party.  *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant.  *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.  *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).  Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).  Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case."  *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (internal quotation marks and citation omitted).  In the absence of any proof,

the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## III.   ANALYSIS

The Court denies Trans-United's Motion for Summary Judgment because Siemens raises several genuine issues of material fact.  There are fact issues whether the parties generally intended 24/7 Logistics' "Terms & Conditions of Service," found on 24/7 Logistics' website, to be part of the Bill of Lading for the QST shipment, and whether various specific terms in the Terms & Conditions were agreed to by the parties.  First, addressing the more general question, the Bill of Lading states that "[f]ull disclosure of terms and conditions are listed on the back of this form or visit our website: www.247expresslogistics.com." Bill of Lading [Doc. # 20, Exh. 1].  The back of the Bill of Lading, however, is blank.  *Id.*  The 24/7 Logistics' website contains a document entitled "Terms & Conditions of Service" (the "Terms & Conditions") [Doc. # 22, Exhs. 14, 15].  There is no evidence that Husband (or anyone else on behalf of Siemens) was given the opportunity to review, or otherwise was made aware of, the contents of Terms & Conditions before he signed the Bill of Lading.  There is no evidence that any Pathways representative saw, let alone agreed to, those conditions.

Trans-United argues that summary judgment should be granted because Siemens failed to timely file a written claim for damage within the nine-month period mandated by the Bill of Lading.  Siemens argues that it is not bound by the nine-month limitation in the Bill of Lading's Terms & Conditions.[2]   Under 49 U.S.C. § 14706(e)(1), "[a] carrier may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section . . . ."   The Terms & Conditions contain a requirement that written notice of damage or loss must be received by "24/7 Logistics" nine months from the date the shipment should have been delivered.  Doc. # 20, Exh. C.  The Terms & Conditions only reference, however, the time period within which 24/7 Logistics, not Trans-United, must be notified about damaged shipments.  A genuine issue of material fact exists as to whether there was a meeting of the minds between Siemens and Trans-United about the applicability of the nine-month limitation in the 24/7 Logistics Terms & Conditions.

There is another fact issue presented in the record.  According to 49 C.F.R. § 1005.2(b), shippers must give notice of damage, in writing or, if agreed upon, electronically, within the time limits specified in the bill of lading or contract of carriage or transportation.  The notice must: "(1) [c]ontain[] facts sufficient to identify

---

[2]    Siemens admits that it made a claim for damage more than nine months after the date the QST was delivered to the Port of Houston.  Defendants' Request for Admissions No. 10 [Doc. # 20, Exh. B].

the baggage or shipment (or shipments) of property, (2) assert[] the liability for alleged loss, damage, injury, or delay, and (3) mak[e] claim for the payment of a specified or determinable amount of money . . . ." *Id.*   A shipper may be excused from strict compliance with the time limits specified in the bill of lading or contract of carriage or transportation if "(1) the shipper, despite reasonable diligence, is unable to ascertain the extent of its loss within the filing period; or, (2) the carrier's conduct misled the shipper into believing that a timely filing was unnecessary." *Salzstein v. Bekins Van Lines Inc.*, 993 F.2d 1187, 1191 (5th Cir. 1993) (citations omitted); *see also Trailblazers Int'l v. Cent. Freight Lines*, 951 F. Supp. 121, 123 (S.D. Tex. 1996).

Assuming the Terms & Conditions govern the shipment, Siemens asserts that the first *Salzstein* exception applies because Siemens sent Trans-United a written claim for damage within nine months of when the extent of the damage first could be discovered through reasonable diligence.   Specifically, Siemens claims that it could not have discovered the QST's internal damages until the QST was transported to Gujarat, installed, and began running.   According to Siemens, the QST was first installed and put into operation in September 2010, after the original nine-month period from the scheduled date of delivery.   Request for Admission Nos. 11 and 12 [Doc. # 20, Exh. B].   Siemens notified Trans-United of the damage on October 22, 2010.   Letter Holding Carrier Liable [Doc. # 22, Exh. 10].   Viewing the record in the light most

favorable to the non-movant, Siemens has raised a genuine issue of material fact regarding whether it was able to ascertain the extent of the damage to the QST within nine months of the QST's delivery to the Port of Houston.

Finally, the Terms & Conditions contain a $10,000 limitation of damages, which poses another fact issue. Unless a shipper and a motor carrier contract otherwise, a carrier is liable for the actual damage to property caused by the carrier when receiving, delivering, or transporting the property. 49 U.S.C. § 14706(a), (c)(1)(A). As noted earlier, Siemens has shown through admissible evidence that there is a genuine issue of material fact whether it is bound by the Terms & Conditions at all. Therefore, the applicability of the $10,000 damage cap is a genuine fact issue.

Trans-United has not met its burden to show that there are no genuine issues of material fact Summary judgment in its favor, therefore, is unwarranted.

## V.    **CONCLUSION AND ORDER**

For the foregoing reasons, it is hereby

**ORDERED** that Defendant Trans-United's Motion for Summary Judgment [Doc. # 20] is **DENIED without prejudice**.

SIGNED at Houston, Texas, this 16th day of **November, 2012**.

Nancy F. Atlas
United States District Judge